UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| JOSHUA KELLER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 1:13-cv-91 |
| v. ) | |
| ) | Judge Curtis L. Collier |
| CITY OF CLEVELAND, TENNESSEE, *et al.*, ) | |
| ) | |
| Defendants. ) | |

### **M E M O R A N D U M**

Before the Court is a motion for summary judgment (Court File No. 14) filed by Defendants City of Cleveland, Tennessee ("Cleveland"), Janice Casteel ("City Manager Casteel") in her capacity as City Manager of Cleveland, and Steve Haun ("Chief Haun") in his capacity as Fire Chief for the Cleveland Fire Department (collectively, "Defendants"). Plaintiff Joshua Keller ("Keller") claims Defendants violated his Fifth and Fourteenth Amendment right to due process when they terminated his employment as a firefighter. Defendants argue Keller had no protected interest in continued employment such that he was entitled to due process, and, even if he did, he received all the process he was due. Keller responded in opposition to Defendants' motion (Court File No. 18), arguing he had both a liberty and property interest in continued employment and that Defendants did not accord him due process when they terminated him.

For the following reasons, the Court agrees with Defendants that Keller has no protected interest in continued employment and will **GRANT** Defendants' motion for summary judgment (Court File No. 14). The Court also declines to exercise supplemental jurisdiction over Keller's additional state law claims and will **REMAND** them to Bradley County Chancery Court.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

From December 2008 to February 2012, Keller was employed by Cleveland as a firefighter. Keller was arrested on January 22, 2012 and was charged with aggravated assault and reckless endangerment (Court File No. 1-3, Writ Petition, Ex. A). Two days later, Chief Haun informed Keller via memorandum that he would be suspended without pay as a result of the arrest and charges and that the suspension would remain in effect until the criminal charges were resolved (*id.* at Ex. B). On January 31, 2012, Keller pleaded guilty to a misdemeanor simple assault charge (*id.* at Ex. C).

After pleading guilty, Keller spoke with Chief Haun to inform him the charges had been resolved. In an internal memorandum, Chief Haun stated that he would discuss Keller's future employment with City Manager Casteel, human resources, and legal counsel. On February 10, 2012, Keller met with a number of people, including Chief Haun, about the future of his employment with Cleveland. Chief Haun gave Keller a memorandum from City Manager Casteel, which disclosed her decision to terminate Keller's employment (*id.* at Ex. E). In addition to his conviction, Keller was terminated for "disgraceful personal conduct," apparently stemming from alcohol abuse. He also received a Disciplinary Action Report discussing the reasons for his dismissal and informing him of his appeal rights (*id.* at Ex. F).

Keller appealed the decision on February 14, 2012, and a hearing was held on March 1, 2012. The following day, City Manager Casteel notified Keller that she was denying the appeal and upholding his termination (Court File No. 14-3, Casteel Aff., Ex. B). Keller subsequently filed an Application for Petition for Writ of Certiorari in Bradley County Chancery Court. In March 2013, Keller filed an amended petition, which included a 42 U.S.C. § 1983 claim alleging violations of the

Fifth and Fourteenth Amendments. Defendants then removed to this court on the basis of federal question jurisdiction. They later filed the instant motion for summary judgment on Keller's federal claim.

## II. STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court views the evidence, including all reasonable inferences, in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). However, the non-movant is not entitled to a trial based merely on its allegations; it must submit significant probative evidence to support its claims. *See Celotex*, 477 U.S. at 324; *McLean v. Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Should the non-movant fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should enter summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

3

**III.    DISCUSSION**

Keller brings one federal claim and a number of state law claims. Because the Court concludes Defendants are entitled to summary judgment on Keller's federal claims, it will remand this case to state court for disposition of his state law claims.

**A. Federal Claim**

To state a claim under § 1983, a plaintiff must "demonstrate that a person acting under color of state law deprived [him] of rights, privileges or immunities secured by the Constitution or laws of the United States." *Barker v. Goodrich*, 649 F.3d 428, 432 (6th Cir. 2011) (internal quotation marks omitted) (citing *Bennett v. City of Eastpointe*, 410 F.3d 810, 817 (6th Cir. 2005)). Accordingly, Keller must demonstrate that he has suffered a deprivation of a federal right. To that end, Keller alleges he was not afforded due process in his termination proceedings. "To establish a violation of his procedural due process rights, [Keller] must show '(1) that [he] was deprived of a protected liberty or property interest, and (2) that such deprivation occurred without the requisite due process of law.'" *Pittman v. Cuyahoga Cnty. Dep't of Children & Family Servs.*, 640 F.3d 716, 729 (6th Cir. 2011) (quoting *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 296 (6th Cir. 2006)). When a state seeks to terminate a protected interest, it must afford notice and an opportunity to be heard before termination. *Id.* (citing *Bell v. Burson*, 402 U.S. 535, 542 (1971)).

**1. Liberty Interest**

Keller first claims he had a protected liberty interest in his employment. He notes that the concept of liberty in the Due Process Clause includes "the right of the individual . . . to engage in any of the common occupations of life." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 572

4

(1972). Keller argues generally that his right to employment includes some protected liberty interest, in part as a result of the specialized training he received as a fireman.

However, a liberty interest in employment typically stems from some sort of defamation connected with an employee's termination, such as when the state "make[s] any charge against him that might seriously damage his standing and associations in his community" or "impose[s] on him a stigma or other disability that foreclose[s] his freedom to take advantage of other employment opportunities." *Roth*, 408 U.S. at 573. In those circumstances, the employee is due a "name-clearing hearing" if he can establish five factors:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment. . . . Second, a plaintiff is not deprived of his liberty interest when the employer has alleged merely improper or inadequate performance, incompetence, neglect of duty or malfeasance. . . . Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.

*Quinn v. Shirley*, 293 F.3d 315, 320 (6th Cir. 2002) (quoting *Brown v. City of Niota*, 214 F.3d 718, 722–23 (6th Cir. 2000)); *see also id.* ("[W]hen a nontenured employee shows that he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, the employer is required to afford him an opportunity to clear his name.") (internal quotation marks omitted). Because "[i]t is the denial of the name-clearing hearing that causes the deprivation of the liberty interest without due process[,] . . . the public employer deprives an employee of his liberty interest without due process, if upon request for a name-clearing hearing, the employee is denied." *Id.*; *see also Baden v. Koch*, 799 F.2d 825, 830 (2d Cir. 1986) ("In order to succeed on his liberty interest claim, [plaintiff] must also prove that [defendant] improperly refused to grant him a post-removal opportunity to refute the false charges that led to his removal.").

5

Here, Keller has not attempted to demonstrate any of these factors. The Court does note that part of the reason he was terminated was alleged "disgraceful personal conduct." Additionally, Chief Haun stated that Keller was terminated for a larger "course of conduct." These allegations of misconduct apparently derived from Keller's trouble with alcohol and a number of incidents that occurred while he was off-duty. Such allegations could be considered "stigmatizing statements." However, Keller has not claimed that the statements were false. In fact, he appears to concede the "conduct" actually occurred but it should not have led to his termination because he was off-duty.

Moreover, although Keller appealed the termination decision, there is no indication in the record that he sought a name-clearing hearing. Without a request and denial of a name-clearing hearing, there is no deprivation of rights. *Brown v. City of Niota, Tenn.*, 214 F.3d 718, 723 (6th Cir. 2000) ("At the time this complaint was filed, the plaintiffs had not suffered a deprivation of their liberty interest without due process of law because they had not been denied a name-clearing hearing by the city."). Because it is not the stigmatizing statement itself but the denial of a name-clearing hearing that violates due process, Keller has not pointed to any procedural shortcoming that could implicate his liberty interest in this case. Accordingly, the Court concludes Keller's claim fails on this ground.

### 2. Property Interest

Keller also alleges he had a protected property interest in future employment. "Property interests 'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'" *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006) (quoting *Roth*, 408 U.S. at 577). "A property interest can be created

6

by a state statute, a formal contract, or a contract implied from the circumstances." *Blazy v. Jefferson Cnty. Regional Planning Comm'n*, 438 F. App'x 408, 412 (6th Cir. 2011) (qouting *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 565 (6th Cir. 2004)). The Court, therefore, must look to Tennessee law to determine whether Keller had a property interest in continued employment.

"The law is well-settled in Tennessee that, absent a contract to the contrary, employment is at will." *Claiborne v. Frito-Lay, Inc.*, 718 F. Supp. 1319, 1321 (E.D. Tenn. 1989). In an at-will employment relationship, "either party [may] terminate [the] relationship with or without cause." *Brown*, 214 F.3d at 721. Keller concedes that Tennessee law generally renders employment relationships at will. He argues, however, that the procedural protections afforded by the Cleveland City Charter were sufficient to create a property interest in continued employment.

Keller relies essentially on one case to support his argument. In *Huddleston v. City of Murfreesboro*, the plaintiff was a fireman who was discharged for violating a Firefighters Duty Manual regulation prohibiting "[i]mmoderate hair styles." 635 S.W.2d 694, 694 (Tenn. 1982). The City Charter provided that any person dismissed by the City Manager could appeal to the City Council and receive a hearing. The City Council affirmed the City Manager's decision and the plaintiff then sought relief in Circuit Court. The Circuit Court held in the City's favor, concluding the plaintiff had no proprietary right to employment. The Tennessee Supreme Court reversed. The court agreed with the Tennessee Court of Appeals, which had concluded that the plaintiff

> was protected against unreasonable and unjustified dismissal to the extent that when dismissed he might appeal to the City Council, have the benefit of counsel on such appeal and be reinstated if five councilmen should vote for his reinstatement.

*Id.* at 695. The court concluded that "the City Charter does afford protection to the plaintiff from unreasonable and unjustified dismissal from employment." *Id.*

7

However, courts have recognized that *Huddleston* is "inapposite" when there is no "statute, ordinance or specific employment contract creating [a proprietary] interest." *Duncan v. City of Oneida, Tenn.*, 735 F.2d 998, 1001 (6th Cir. 1984). Thus Keller must identify some provision that creates an interest in continued employment. In order to demonstrate that he has a property interest in employment, Keller relies upon the City Charter to the extent that it directs the City Council to promulgate personnel rules, discussed below. Additionally, he points to the power of the City Manager "[t]o appoint and, when deemed necessary for the good of the service, suspend or remove all city employees and appointive officers provided for by or under this charter or personnel rules adopted pursuant to this charter" (Court File No. 18-2, Cleveland City Charter, Art. V, § 4, ¶ 1).

With respect to the provisions of the City Charter, the Sixth Circuit has concluded language such as "may dismiss an employee for just cause" is insufficient to establish a property interest in continued employment with a city.[1] In *Brown*, the city's policy statement provided that "[a] city employee may be terminated for any just cause at the discretion of the board." 214 F.3d at 722 n.2. The court concluded this was insufficient under Tennessee law to establish a property interest.

> The rule concerning employee termination contains the language that the board of commissioners "may" fire a employee for any just cause. The term "may" is permissive and suggests that there are other permissible means for terminating a city employee. In cases where Tennessee courts have found an employment contract to exist, the employee handbook contained the mandatory terms "shall" and "will."

*Id.* at 721-22 (citing *Williams v. Maremont Corp.*, 776 S.W.2d 78, 80-81 (Tenn. Ct. App. 1988); *Hamby v. Genesco, Inc.*, 627 S.W.2d 373, 376 (Tenn. Ct. App. 1981)).

---

[1] This language in *Brown* came from rules promulgated by the board of commissioners rather than from a charter. But the Court sees no reason why the analysis would be any different. *See Aldridge v. City of Memphis*, 404 F. App'x 29, 35 (6th Cir. 2010) (considering whether provisions of the city charter create a property right in a certain rank within a police force).

8

In this case, the only provision of Cleveland's City Charter that could conceivably create any property interest in employment is the City Manager's power to terminate employees "when deemed necessary for the good of the service." This language is even less suggestive of a property interest than the language rejected in *Brown*. The power to dismiss employees is not cabined to cause, nor does the City Charter itself provide procedures for terminating employees. Rather, the City Manager may dismiss any employee if she deems it "necessary for the good of the service," which could encompass any number of reasons for terminating an employee. Nor is the Court convinced that the City Manager's duty to see that all acts of the City Council are "faithfully executed" somehow creates a binding employment contract. Thus the City Charter contains no provision creating a property interest.

Turning to the personnel regulations, Keller points to the procedures for termination including his right to receive "advanced written notice" of the nature of the action and his right to an appeal to the City Manager (Court File No. 1-3, Ex. J). The substance of Keller's procedural argument is that he was not provided full notice of the cause of his termination and that the City Manager engaged in *ex parte* communications.

In a similar context, the Sixth Circuit held that a city's "rules and regulations, like employee handbooks, could modify an employment relationship." *Brown*, 214 F.3d at 721. "Tennessee courts have 'recognized that an employee handbook can become a part of an employment contract.'" *Id.* (quoting *Rose v. Tipton Cnty. Pub. Works Dep't*, 953 S.W.2d 690, 692 (Tenn. Ct. App. 1997)). "In order to constitute a contract, however, the handbook 'must contain specific language showing the employer's intent to be bound by the handbook's provisions.'" *Id.* (quoting *Rose*, 953 S.W.2d at 692). "[T]he language used must be phrased in binding terms, interpreted in the context of the entire

9

handbook, and read in conjunction with any other relevant material, such as an employment application.'" *Rose*, 953 S.W.2d at 692 (quoting *Claiborne*, 718 F. Supp. at 1321).

That being said, Tennessee courts have set "a high standard for establishing the existence of an employer's specific intent to be bound by the terms of an employee handbook." *Brown*, 214 F.3d at 721. "Even where part of the manual may be considered to give rise to a definitive guarantee based on past practices of the company, a manual will not necessarily be treated as a contract if specific language within the manual disclaims certain guarantees." *MacDougal v. Sears, Roebuck & Co.*, 624 F. Supp 756, 759 (E.D. Tenn. 1985). "'Where an employee handbook specifically provides that it is not a contract and reserves to the employer the unilateral right to amend the handbook's provisions, such handbook does not, as a matter of law, constitute part of the employment contract between the employer and the employee.'" *Wiggins v. Kimberly-Clark Corp.*, No. 3:12-CV-115, 2012 WL 4863158, at *4 (E.D. Tenn. Oct. 12, 2012) (quoting *Adcox v. SCT Prods.*, No. 01A01-9703-CV-00123, 1997 WL 638275, at *3 (Tenn. Ct. App. Oct.17, 1997)).

Here, the personnel regulations explicitly disclaim that they constitute any sort of contract for employment.

> These policies nor any provisions herein are an employment contract or any other type of contract. All employees of the City are employed for an indefinite term. The City of Cleveland reserves the right to change or revise these rules and regulations when such action is deemed necessary by the City of Cleveland.

(Court File No. 14-2, Personnel Manual, § 1, ¶ A).[2] This disclaimer is sufficient to prevent these regulations, and any procedural protections they afford, from being construed as creating a property

---

[2] Keller also mentions offhand that the personnel regulations contain reasons for dismissal, but the regulations state explicitly that the list is non-exhaustive (Court File No. 1-9, PageID # 404-05).

interest in continued employment or a binding employment contract. *See McCarthy v. UT-Battle, LLC*, No. E2003-02052-COA-R3-CV, 2004 WL 350665, at *1 (Tenn. Ct. App. Feb. 25, 2004) (holding a disclaimer effective where it stated "ORNL retains the right to change, modify, suspend, interpret, or cancel in whole or in part any of its published or unpublished policies or practices, without advance notice, in its sole discretion, without having to give cause or justification to any employee. . . . Nothing contained in this handbook should be construed as a guarantee of continued employment, but rather, employment at ORNL is on an at-will basis").

The Court therefore concludes that neither the City Charter nor the personnel regulations vest in Keller any property right in future employment. But one aspect of this case, independent of the issues discussed above, demonstrates that Keller had no property interest in his employment: his employment was for an indefinite term and he points to no contrary provision in the personnel regulations or the City Charter. In fact, the personnel regulations, as noted above, state explicitly that all employees of Cleveland are employed for an indefinite term. In *Brown*, the Sixth Circuit found this issue to be dispositive of the case on its own.

> If we were willing to accept the plaintiffs' argument that the board's rule on termination creates an employment contract between the city and the plaintiffs, the plaintiffs still cannot establish that they had a property interest in continued employment because this contract does not provide a definite term of employment. Tennessee courts have held that "[t]he law is well established in this state that a contract for employment for an indefinite term is a contract at will and can be terminated by either party at any time without cause." *Bringle v. Methodist Hosp.*, 701 S.W.2d 622, 625 (Tenn. Ct. App.1985); *see also Graves v. Anchor Wire Corp.*, 692 S.W.2d 420, 422 (Tenn. Ct. App.1985). . . . Because the plaintiffs have pointed to no rule or regulation that defines the duration of the contractual relationship between the city and its employees they have not rebutted the presumption that they were employees at will. The plaintiffs did not have a protected property interest in their continued employment with the city . . . .

214 F.3d at 722. Similarly, because Keller can point to nothing in the record that creates a definite

11

term of employment, he has not "rebutted the presumption" of at-will employment. Therefore, as in *Brown*, he had no protected property interest in continued employment.[3]

Because the Court concludes Keller had no protected liberty or property interest in his employment, Defendants did not violate his procedural due process rights under the United States Constitution. Accordingly, Keller has not shown that a state actor violated his federal rights under color of state law and Defendants' motion for summary judgment will be **GRANTED**.

**B. State Claims**

Keller's Petition for an Application for a Writ of Certiorari also raises a number of claims under state law.[4] As state law claims brought in a federal-question case, these claims can only be heard by the Court through the exercise of supplemental jurisdiction pursuant to 28 U.S.C. § 1367. The exercise of federal supplemental jurisdiction is discretionary. District courts may decline to exercise supplemental jurisdiction over a state law claim if:

(1) the claim raises a novel or complex issue of State law,
(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining

---

[3] The Court notes that the Sixth Circuit, in a recent published opinion, suggested that this portion of *Brown* was dicta and that the term of employment may not be dispositive of this issue. *Freeze v. City of Decherd*, – F.3d –, No. 12-6160 (6th Cir. June 4, 2014). The *Freeze* court concluded that Tennessee law contains a "term-of-years *presumption*" rather than a "hard-and-fast rule." *Id.* (emphasis added). Because the Court otherwise concludes that Keller had no property interest in continued employment, it need not consider whether *Freeze* should affect the analysis in this case.

[4] Because the Court grants summary judgment on Keller's federal claim and declines to exercise supplemental jurisdiction over his state claims, the Court will not dismiss Defendants Haun and Casteel from this action as requested by Defendants. That question remains for the state court on remand.

jurisdiction.

28 U.S.C. § 1367(c). In making this discretionary decision, a district court should weigh "the values of judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *accord Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993).

When all federal claims have been dismissed, the preferred disposition of state law claims is dismissal, or, where a case has come into federal court on removal, remand to state court. *Gamel v. City of Cincinnati*, 625 F.3d 949, 952 (6th Cir. 2010) (citing *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)). A federal district court should only exercise its discretion to retain supplemental jurisdiction after dismissing federal claims under limited circumstances, which frequently involve some degree of forum manipulation. *See Carnegie-Mellon*, 484 U.S. at 357. Because no federal claims remain in the instant action, the Court will **REMAND** this case to Bradley County Chancery Court.

## IV. CONCLUSION

For the foregoing reasons, the Court concludes Keller has failed to establish a violation of his rights under the United States Constitution and will **GRANT** Defendants' motion (Court File No. 14). There being no federal claims remaining, the Court declines to exercise supplemental jurisdiction over Keller's state law claims and will **REMAND** this case to Bradley County Chancery Court for disposition of Keller's remaining claims.

**An order shall enter.**

/s/
**CURTIS L. COLLIER
UNITED STATES DISTRICT JUDGE**